**Majority Panel Opinion of July 16, 2019 and Dissenting Panel Opinion of September 24, 2019 Withdrawn; Affirmed in Part, Reversed and Rendered in Part, Reversed and Remanded in Part, and En Banc Majority Opinion and En Banc Dissenting Opinions filed March 31, 2020.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00062-CV

## IN THE INTEREST OF L.C.L. AND M.E.M., CHILDREN

**On Appeal from the 315th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-03785J**

### EN BANC MAJORITY OPINION

Appellant F.L. ("Mother") appeals the trial court's final order terminating her parental rights to her children L.C.L. ("Lorenzo") and M.E.M. ("Melissa").[1] The trial court terminated Mother's parental rights on predicate grounds of endangerment and failure to comply with the service plan for reunification. *See* Tex. Fam. Code

---

[1] Lorenzo and Melissa are pseudonyms. Pursuant to Texas Rule of Appellate Procedure 9.8, we use fictitious names to identify the minors and other family members involved in this case. *See* Tex. R. App. P. 9.8.

Ann. § 161.001(b)(1)(D), (E), and (O). The trial court further found that termination of Mother's parental rights was in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2).

On appeal, Mother asserts six issues, most of which are duplicated in each section of her brief. Mother's issues can be summarized as follows: (1) the trial court erred in failing to file findings of fact and conclusions of law; (2) the trial court violated Mother's constitutional rights to (a) due process and due course of law by failing to give her a family services plan in Spanish (the language she understands), and (b) equal protection; (3) the evidence presented at trial was legally and factually insufficient to support the trial court's findings (a) of endangerment, (b) of failure to follow a family service plan, and (c) that termination is in the best interest of the children; and (4) the trial court erred by admitting illegally obtained evidence. A panel of this court affirmed the trial court's final order. Mother filed a motion for en banc reconsideration, a majority of this court voted to reconsider this case, and the en banc court heard oral argument. After analyzing the evidence presented at trial and in concluding there is not clear and convincing evidence that termination was in the best interest of the children, we reverse the portions of the trial court's final order terminating Mother's parental rights, we affirm the remaining challenged portions of the trial court's final order, and we remand this case to the trial court for further proceedings limited to Texas Family Code section 161.001(b)(2).

## BACKGROUND

On March 22, 2016, the Department of Family and Protective Services (the "Department") received a referral alleging neglectful supervision of Lorenzo, Melissa, and A.M. (another child in the home, age 15). Specifically, the referral alleged that the children were often left home alone, that there was no electricity in the home, and that the children were very thin.

2

After preliminary research into the case, Alexis Wilson, the Department caseworker, visited Mother and the children in their home on May 25, 2016. The caseworker did not observe any marks or bruises on either Lorenzo or Melissa and noted that they both appeared clean, healthy, and developmentally on target. She also noted the home appeared to look appropriate, had all working utilities, and had no safety hazards. Additionally, she noted there was plenty of leftover food in the freezer. A.M. informed the caseworker that there was no drug or alcohol use in the home, that she watches her siblings when her mother leaves the house, and that her mother had never left home for days at a time.

The caseworker then asked Mother to take a drug test, which she agreed to do. The result of the initial urine drug test was negative; the results from the hair test showed positive for marijuana and cocaine. The children were subsequently removed from Mother's care on June 23, 2016. On June 24, 2016, the Department filed an Original Petition for Protection of a Child for Conservatorship and for Termination in Suit Affecting the Parent-Child Relationship based upon Mother's positive drug test and Mother's alleged inability to provide appropriate caregivers for the children. Initially, the children were placed in separate foster homes. On October 20, 2016, Lorenzo and Melissa were moved together to a foster home and stayed together even when they were moved to several other foster homes over the course of the proceedings. A bench trial was initially called on December 11, 2017, recessed, and continued multiple times over the next year (on March 5, 2018, April 23, 2018, May 2, 2018, October 30, 2018, and November 27, 2018). The trial court signed a Decree for Termination ("final order") on December 31, 2018, in which the trial court (among other things) terminated the parent-child relationship between Mother and her children, Lorenzo and Melissa.

## STANDARD OF REVIEW

The involuntary termination of parental rights implicates fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.,* 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Because of the severity and permanency of terminating the parental relationship, Texas requires clear and convincing evidence to support such an order. *See generally* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.,* 96 S.W.3d 256, 265-66 (Tex. 2002).

On appeal, Mother challenges the legal and factual sufficiency of the evidence supporting the trial court's order terminating her parental rights pursuant to Texas Family Code section 161.001(b). Section 161.001(b) permits the termination of a parent-child relationship if the trial court finds by clear and convincing evidence that (1) one or more predicate acts enumerated in section 161.001(b)(1) was committed, and (2) termination is in the best interest of the child. *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.F.C.*, 96 S.W.3d at 264.

Reviewing Mother's legal sufficiency challenge under the clear and convincing evidentiary standard, we "should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

In reviewing termination findings for factual sufficiency of the evidence, we consider and weigh all the evidence, including disputed or conflicting evidence. *In*

*re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* We give due deference to the factfinder's findings and we do not substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).

## ANALYSIS

We address Mother's issues out of order, determining rendition issues before remand issues because rendition affords Mother the greatest relief.[2] Accordingly, we begin by analyzing Mother's third issue, within which she raises several different arguments we address in turn.

## I.    Endangerment Findings

Mother challenges the legal and factual sufficiency of the evidence to support the trial court's endangerment findings under Texas Family Code section 161.001(b)(1)(D) and (E).

Courts are authorized to terminate parental rights if the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child" or "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E). The sole basis for termination of Mother's rights was that she tested positive for drugs both initially and throughout the proceedings. However, there was no evidence adduced at trial connecting Mother's positive drug tests to

---

[2] *See Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999) (per curiam) ("Generally, when a party presents multiple grounds for reversal of a judgment on appeal, the appellate court should first address those points that would afford the party the greatest relief.").

any activity that endangered her children. A plain language reading of the statute requires a causal connection between Mother's drug use and the alleged endangerment.

In many cases, competent evidence is introduced at trial to prove that a parent's drug use rises to the level that it endangers the children. In this case, however, no such proof exists in the record. The caseworker testified that she "believe[s] testing positive for drugs is endangering children"; this was the *only* "evidence" presented at trial that Mother's drug use endangered her children. The caseworker did not identify any behavior endangering the children. When pressed by Mother's trial counsel, the caseworker answered that she was not able to assert a specific act that placed the children in danger because of the Mother's use of drugs. The caseworker's conclusory statement was the *only* support for the allegation that Mother's drug use endangered her children. Further, there was no evidence of criminal charges related to Mother's drug use nor was there proof of threat of incarceration due to alleged drug use. Simply put, there was legally insufficient evidence at trial to support an endangerment finding.

Conclusory statements are not evidence. *See In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.) ("[C]onclusory testimony, such as the caseworker's, even if uncontradicted, does not amount to more than a scintilla of evidence."). The caseworker's conclusory statements that a parent's drug use de facto endangers their children is insufficient to support the trial court's finding by clear and convincing evidence that the standards for termination have been met under Texas Family Code section 161.001(b)(1)(D) and (E). *See In re B.R.*, 456 S.W.3d 612, 617 (Tex. App.—San Antonio 2015, no pet.) ("[Texas Department of Family and Protective Services supervisor]'s agreement that it was in the children's best interest to terminate appellant's parental rights and it was in their interest to 'move on' was conclusory."); *In re A.H.*, 414 S.W.3d at 807 (caseworker's

6

conclusory testimony regarding children's best interest constitutes insufficient evidence); *see also Vazquez v. Vazquez*, 292 S.W.3d 80, 85 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that, in review of divorce decree, wife's statements that she had signed the decree and thought conservatorship was in the best interest of the children were conclusory and did not rise to the level of competent evidence trial court could use to determine best interest of children). Therefore, the Department failed to prove a causal link between Mother's drug use and the alleged endangerment.

Our court has previously held that (1) endangering acts need not be directed at the child or cause actual injury or threat of injury to the child, and (2) this predicate finding of endangerment does not require a causal connection between the parent's misconduct and actual harm to the child resulting from that misconduct. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *In re U.P.*, 105 S.W.3d 222, 233 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). However, a plain reading of the statute itself does not support this interpretation. The Family Code expressly contemplates use of a controlled substance by a parent "in a manner that endangered the health and safety of the child." *See* Tex. Fam. Code Ann. § 161.001(b)(1)(P)(i) and (ii).

Somewhere along the way, our court conflated drug use with child endangerment such that mere drug use alone became conclusive evidence that a child was endangered. Sections (D) and (E) are "catch-all" provisions to protect children whose parents have been proven to endanger their children or to put their children in circumstances that endanger them, but we are tasked with reading the statute as the legislature intended.[3] *See* Tex. Gov't Code Ann. § 311.021(2) ("In enacting a

---

[3] To the extent this court's opinions have erroneously interpreted Texas Family Code section 161.001(b)(1)(D) and (E) to allow termination of the parent-child relationship based solely on a finding that a parent used a controlled substance (as defined by Chapter 481 of the Health and Safety Code) without the additional elements required by Texas Family Code section

7

statute, it is presumed that . . . the entire statute is intended to be effective."). We do that not by expanding the reasons why parents can lose their rights to their children (and children can lose their constitutional rights to their relationship with their parents) but by making sure that the true intent of the legislature — that is, to keep families together if at all possible — is protected by reading the statute narrowly and as enacted by the legislature. Under the statute, and viewing the evidence in the light most favorable to the trial court's finding, we conclude a reasonable factfinder could not have formed a firm belief or conviction that Mother violated Texas Family Code section 161.001(b)(1)(D) and (E) through drug use alone. The dissent's interpretation of the Texas Supreme Court's reasoning in *J.O.A.* leads to the absurd conclusion that a parent's drug use alone, without proof of any causal connection to endangering their children's welfare, is enough to justify terminating a parent-child relationship. We will not presume the supreme court intended that result. Accordingly, we hold the evidence is legally insufficient to support termination of Mother's parental rights under section 161.001(b)(1)(D) and (E), and we sustain Mother's third issue in that regard.

## II.     Family Service Plan

To the extent Mother also challenges the trial court's predicate finding that she failed to follow her family service plan on sufficiency grounds and asserts the evidence is legally and factually insufficient to support this predicate finding, we reject her assertion.

Mother testified that she failed to show up for all scheduled drug tests, failed to attend individual therapy, and failed to attend domestic violence counseling.

---

161.001(b)(P) ("in a manner that endangered the health or safety of the child, and: (i) failed to complete a court-ordered substance abuse treatment program; or (ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance"), those opinions are overruled.

8

When viewed in the light most favorable to the trial court's finding, the evidence is legally sufficient to support the trial court's determination that Mother failed to follow her family service plan.

Reviewing all of the evidence in the light most favorable to the trial court's findings, we conclude that a reasonable factfinder could have formed a firm belief or conviction as to the truth of the findings under subsection (O). *See In re J.F.C.*, 96 S.W.3d at 266. In light of the entire record, we also conclude that the factfinder could have reasonably formed a firm belief that the evidence is factually sufficient. *See In re H.R.M.*, 209 S.W.3d at 108.

Therefore, we hold the evidence presented at trial is both legally and factually sufficient to support the trial court's predicate finding under Subsection (O) by clear and convincing evidence.[4] Thus, we overrule Mother's third issue with respect to her sufficiency challenge. Even so, termination of parental rights under section 161.001(O) must be in the children's best interest as we discuss below.

## III.    Best Interest of the Children

Mother challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights is in the children's best interest.

Although prompt and permanent placement in a safe environment is presumed to be in the children's best interest, Tex. Fam. Code Ann. § 263.307(a), courts apply a strong presumption that the best interest of the children is served by keeping the

---

[4] Despite our conclusion, we are compelled to note our deep concern that Mother did not receive a family service plan in a language she understands because her lack of understanding the requirements and details of the plan would have an impact on her ability to successfully complete it. However, because she has not properly preserved a complaint in that regard, we conclude based on the record before us that the evidence is both legally and factually sufficient to support the finding that Mother failed to comply with her family service plan.

9

children with their natural parents; the burden is on the Department to rebut that presumption. *In re D.R.A.,* 374 S.W.3d at 531. In determining the best interest of the children, the factfinder may consider the nine *Holley* factors. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The *Holley* factors include: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parents' acts or omissions. *Id.*

In this case, no evidence was presented regarding the following five factors: the present and future emotional and physical danger to the children; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the children; and acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate. Additionally, there is no evidence of acts or omissions by the Mother and no evidence of excuses for any acts or omissions as considered in factor nine.

Further, the record contains only minimal evidence of factors six and seven — the plans for the children by the individuals or agency seeking custody, and the stability of the home or proposed placement. In fact, the caseworker only stated that the foster placement was intended to be permanent. Also, the only evidence adduced at trial regarding factor one — the children's wishes — was the caseworker's testimony that the children had expressed desires to be adopted.[5]

_____

[5] Specifically, the caseworker testified: "The children are currently in a home that is

10

The dissent makes several unwarranted complaints regarding our best interest analysis. First, it suggests Mother's failure to complete certain parts of her court-ordered family service plan shows potential physical danger to the children. Specifically, the dissent points to Mother's failed drug tests and no-shows as evidence that she failed to demonstrate a willingness to effect positive environmental and personal changes within a reasonable amount of time. However, the drug screenings and services for substance abuse treatment were contemplated as part of Mother's family service plan; and it has not been proven that she understood the plan (*see infra* Section IV).

Further, the dissent recites from the permanency report several listed disorders and intellectual and learning disabilities of the children diagnosed by the Children's Crisis Care Center. The dissent concludes: "The record reflects that at the time of removal the children were not in a safe stable home. Like Lorenzo, Melissa was experiencing adjustment disorder . . . ." Seemingly, the dissent implies that the purported presence of disorders and disabilities constitutes sufficient evidence that Mother is unable to provide for present and future physical and emotional needs of the children.

However, there was no testimony regarding the evaluations made by the Children's Crisis Care Center as to Lorenzo or Melissa that present a laundry list of diagnoses for each of them. The basis for the listed diagnoses is a "Psychological/Psychiatric Evaluation" given by the "Children's Crisis Care Center" on July 25, 2016, and August 11, 2016, respectively. In Lorenzo's case, at

---

meeting all of their needs. Both of the children have expressed desires to stay and expressed desires of adoption. I believe this home could meet their long term needs." The evidence shows, however, that although the children had been removed from Mother's care for almost eighteen months at that point, the children had only been in this foster home for 25 days at the time of the caseworker's testimony.

11

age 5, this evaluation diagnosed him with "Child Neglect, Suspected; Intellectual Disability, Mild; Specific Learning Disorder with Impairment in Reading, written expression, and mathematics; Adjustment Disorder with Mixed Anxiety and Depressed Mood; Insomnia Disorder; Enuresis [bedwetting], Nocturnal Only." Melissa, at age 4, was similarly diagnosed with "Adjustment Disorder with Mood Conduct; Unspecified Communication Disorder; Child Neglect; Upbringing away from parents; Disruption of family by separation or divorce; Encounter for Mental Health Services for Victim of Child Neglect."

These diagnoses do not constitute proof of endangerment by Mother or proof of instability in the home. First, there is no evidence in the record regarding the qualifications of any person or persons who actually performed the evaluations or made the diagnoses. Second, these evaluations were made more than a month after the children had been separated from their Mother and each other. Third, there is no evidence or testimony as to whether any of the disorders or disabilities were present before the children's removal from Mother's care, or if they were instead caused by the traumatic separations from Mother and each other. Melissa and Lorenzo were removed from their Mother's home on June 23, 2016 (at the ages of 4 and 5, respectively) and kept in separate housing apart from each other until October 20, 2016, when they were placed together. The guardian ad litem testified at trial that, "The one thing that I do believe is very important to the children as well as in their best interest is to remain together; that's paramount, I believe to their wellbeing. They are very, very bonded." It would have been unreasonable for the trial court to rely upon the evaluations as proof that these issues existed prior to the removal of Lorenzo and Melissa from Mother's home because there was no testimony or other evidence in the record that supports such a reliance.

Contrary to the dissent's assertion, having the listed disorders and disabilities

does not constitute evidence of an unstable or unsafe home. Nor does the existence of the disorders and disabilities constitute evidence of Mother's inability to provide for the children's emotional or physical needs. Even assuming the children's removal from their Mother and each other was not the cause of the listed diagnoses, there was no proof that Mother did not provide for the children's physical and emotional needs, or that she is unable to provide for their needs in the future.

We also note that the dissent fundamentally misstates evidence in the record. For instance, the dissent relies upon and presumes that the caseworker who testified at trial is correct regarding Lorenzo not being enrolled in school at the time of removal when, in fact, there is evidence in the Department's initial evaluation that Lorenzo was enrolled in a school.[6] Notably, there is also no evidence that Mother was not homeschooling Lorenzo (an act specifically carved out of reasons for termination in the best interest of a child, Tex. Fam. Code Ann. § 161.001(c)(1)).

After viewing the evidence in the light most favorable to the trial court's finding, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in the best interest of the children. We therefore hold the evidence is legally sufficient to support the trial court's finding that termination of Mother's parental rights was in the best interest of the children.

However, viewing the evidence in a neutral light and weighing all the evidence, we conclude the majority of the *Holley* factors substantially weigh against the best interest finding in this case.[7] Cognizant of the (1) constitutional concerns

---

[6] The dissent opines that this is a matter of credibility that we must leave to the factfinder; however, the record is clear that the caseworker who testified at trial gave testimony contradicting the affidavit of the only caseworker with first-hand knowledge (the one who did the initial investigation and determined that Lorenzo was, in fact, enrolled in school).

[7] A *Holley* factor weighing in favor of the best interest finding is the children's desire. According to the caseworker's testimony, the children expressed a desire to be adopted. Although there is only minimal evidence of the plans for the children by the agency seeking custody and the

related to parental termination, (2) clear instructions from the Texas Supreme Court to strictly scrutinize termination proceedings and strictly construe involuntary termination statutes, (3) strong presumption that preservation of the parent-child relationship is in the children's best interest, (4) obligation under a factual sufficiency review to consider all evidence equally, and (5) the reports submitted by other caseworkers which conflict with the conclusory statements and misstatements in the caseworker's testimony, we conclude based on the record before us that a reasonable factfinder could not have formed a sufficiently firm belief or conviction that termination of Mother's parental rights would be in the children's best interest. *See In re D.D.M.*, No. 01-18-01033-CV, 2019 WL 2939259, at *8 (Tex. App.— Houston [1st Dist.] July 9, 2019, no pet.) (mem. op.). Accordingly, we sustain Mother's third issue that the evidence is factually insufficient to support a finding that termination is in the children's best interest.

## IV. Constitutional Rights Violation

In her second issue, Mother alleges the trial court violated her constitutional rights under the United States and Texas Constitutions. We address her contentions below.

### A. Right to Due Process and Due Course of Law

Mother challenges termination of her parental rights for failure to comply with the family service plan for reunification under Texas Family Code section 161.001(O)[8] because the plan was not in her native Spanish language in violation of her due process and due course of law rights.

The Family Code requires that a service plan "be in writing in a language that

---

stability of the home or proposed placement, these two factors (even if weak) could be weighed in favor of the best interest finding by the factfinder.

[8] *See* Tex. Fam. Code Ann. § 161.001(O).

the parents understand, or made otherwise available." Tex. Fam. Code Ann. § 263.102(a)(2). In addition, the Family Code requires that the service plan must be written "in a manner that is clear and understandable to the parent in order to facilitate the parent's ability to follow the requirements of the service plan." *Id.* § 263.102(d).

It is uncontroverted that Mother was not provided with a written service plan in a language that she understands. The dissent opines that, because the trial court instructed Mother her parental rights could be terminated if she did not successfully complete a family service plan, she understood exactly what she was supposed to do under the service plan. The record contains no evidence of the trial court reading the requirements of the family service plan into the record in the Mother's presence or at any time such that Mother would have had it translated in its entirety by the Spanish language translator provided at the hearings.

Despite the Department's uncontroverted failure to provide Mother with a service plan in Spanish, Mother failed to follow the requirements of Texas Rule of Appellate Procedure 33.1(a) to preserve her complaint for appellate review. *See* Tex. R. App. P. 33.1(a); *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003) (complaint based on constitutional error must be preserved in the trial court). Were this a criminal case, we would not stop at a Rule 33.1(a) analysis and would instead analyze this issue under *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993) (en banc), in which the Court of Criminal Appeals outlined the three classifications of rules contained in the Texas criminal adjudicatory system: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request. However, the Texas Supreme Court has so far declined to follow the Court of Criminal Appeals' *Marin* analysis in parental rights termination cases (even though it does so in juvenile justice cases). *See In re B.L.D.*,

113 S.W.3d at 351. Therefore, we are unable to examine Mother's due process and due course of law challenge and accordingly overrule her second issue in that regard.

## B. Right to Equal Protection

Mother also claims the trial court violated her rights to equal protection under the Fourteenth Amendment to the United States Constitution when it allowed a caseworker to testify that "a parent would be unfit if the parents' country of origin was not the United States."

However, the record is devoid of any references to Mother's country of origin. Moreover, Mother's trial counsel neither mentioned any specific issues concerning national origin nor did counsel assert an equal protection violation. Furthermore, the majority of examples Mother cites in her brief are of caseworker testimony concerning the children's fathers, both of whom were (at the time of trial) residents of countries other than the United States. Because Mother failed to assert her equal protection complaint in the trial court, we do not examine it here and accordingly overrule her second issue. *See* Tex. R. App. P. 33.1(a); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) ("As a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal.").

## CONCLUSION

We hold the evidence is legally insufficient to support termination of Mother's parental rights under Texas Family Code section 161.001(b)(1)(D) and (E). We further hold there is (1) legally and factually sufficient evidence to support termination of Mother's parental rights under Texas Family Code section 161.001(b)(1)(O), and (2) legally sufficient evidence to support a finding that termination of Mother's parental rights is in the best interest of the children. But we hold there is factually insufficient evidence to support a finding that termination of Mother's parental rights is in the children's best interest. Therefore, we reverse the

portion of the final order regarding the findings under Texas Family Code section 161.001(b)(1)(D) and (E) and render judgment deleting these findings. We reverse the portion of the final order regarding the finding under Texas Family Code section 161.001(b)(2) and remand the case to the trial court for further proceedings limited to Texas Family Code section 161.001(b)(2).[9]  *See* Tex. R. App. P. 43.2(d). We affirm the remaining challenged portions of the final order.

/s/    Meagan Hassan
Justice

En banc court consists of Chief Justice Frost and Justices Christopher, Wise, Jewell, Bourliot, Zimmerer, Spain, Hassan, and Poissant. Justice Hassan authored the En Banc Majority Opinion, in which Justices Bourliot, Zimmerer, Spain, and Poissant joined. Justice Wise authored an En Banc Dissenting Opinion, in which Chief Justice Frost and Justices Christopher and Jewell joined. Chief Justice Frost authored an En Banc Dissenting Opinion.

---

[9] In light of our disposition, we need not address Mother's remaining issues, none of which is a rendition issue necessary to the disposition of the appeal. *See* Tex. R. App. P. 47.1.